# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# BOWLING GREEN DIVISION
# CIVIL ACTION NO. 1:17-CV-00052-GNS

**SOUTH POINTE WHOLESALE, INC.**                                             **PLAINTIFF**

**VS.**

**MARIE T. VILARDI**                                                                      **DEFENDANT**

## MEMORANDUM, OPINION, AND ORDER

Before the Court is the motion of Plaintiff South Pointe Wholesale, Inc., DN 71, for reconsideration of this Court's earlier ruling at DN 67 on discovery issues. Defendant Marie T. Vilardi has filed a response in opposition at DN 87 and South Pointe has replied at DN 92.

### Nature of the Case

According to South Pointe's complaint, South Pointe is a Kentucky Corporation organized in 2001 and operates as a pharmaceutical distributor. South Pointe purchases inventory either directly from pharmaceutical manufacturers or from other distributors. These purchases require price negotiations conducted by either distributor or vendor employees or independent brokers working on a commission basis (DN 1, p. 2).

South Pointe hired Vilardi on March 8, 2004, as a pharmaceuticals purchaser. In 2006, Vilardi purchased a forty-five percent ownership in South Pointe and was elected to South Pointe's board of directors. She was later elected as vice president and chief operating officer (Id. at p. 4-5). In 2015, South Pointe employees became suspicious that Vilardi was making purchases that were not in the company's best interests and South Pointe began restricting

Vilardi's purchasing autonomy. In 2017, South Pointe obtained information which led it to believe that Vilardi was performing work for a South Pointe competitor. As a result, South Pointe terminated Vilardi's employment on March 14, 2017 (Id. at p. 6-7). Subsequent to her termination, South Pointe conducted further investigation and concluded that Vilardi had worked for other competitors and engaged in self-dealing (Id. at p. 8-11). South Pointe's complaint against Vilardi alleges violation of fiduciary duties under Kentucky statutes (Id. at p. 11-12).

Vilardi has asserted counterclaims against South Pointe. She contends she made two loans to South Pointe, one in 2006 in the principal sum of $300,000.00 and another in 2007 in the principal sum of $205,000.00. These loans were made because South Pointe "was in desperate financial condition," and were both demand notes. She states she made demands for repayment, along with interest, and South Pointe is in default on its repayment obligation (DN 10, p. 9-10). Vilardi further contends that her termination from employment was wrongful and motivated by age discrimination. As a shareholder in South Pointe, Vilardi claims that she has been wrongfully denied access to South Pointe's business and financial records to which she is entitled under Kentucky law and demands an accounting (Id. at p. 10-11).

Prior Ruling

The order in question ruled on Vilardi's motion to compel discovery from South Pointe. In DN 54 Vilardi moved for documentation between South Pointe and eleven named pharmaceutical industry-related business entities, documentation related to communications or business between South Ponte principal Jarrod Shirley, on behalf of South Pointe, and L.A.L. Consultants and Peter Peller, and for bank statements, checkbook ledgers and QuickBook Reports for South Pointe financial matters from January 1, 2006, to the present.

In ruling on the motion to compel, the undersigned conducted an evaluation of whether the requested information bore relevance to any of Vilardi's claims or defenses. The undersigned concluded that the discovery was not relevant to Vilardi's claims for wrongful denial of shareholder access to business records or fraudulent inducement to loan money. The undersigned agreed, however, with Vilardi's contention that the information could be relevant to her defense based on the equitable principal of "unclean hands" and ordered production of the documents (DN 67).

South Pointe's Motion to Reconsider

A motion to reconsider is treated as a motion to alter or amend a judgment under Fed. R. Civ. P. 59(e). Inge v. Rock Fin. Corp., 281 F.3d 613, 617-18 (6th Cir. 2002). Such a motion may be granted where there is a clear error of law, newly discovered evidence, an intervening change of law or to prevent manifest injustice. GenCorp, Inc. v. Am. Int'l Underwriters, 178 F.3d. 804, 824 (6th Cir. 1999). A motion under Rule 59(e), however, is not an opportunity to re-argue a case. Sault Ste. Marie Tribe of Chippewa Indians v. Engler, 146 F.3d 367, 374 (6th Cir. 1998).

South Pointe notes that Vilardi's initial motion to compel was barren of argument as to the relevance of the discovery she sought to have compelled. It was in Vilardi's reply that she first set forth an argument that the unclean hands doctrine provided a basis upon which to find the discovery relevant to that defense. South Pointe asserts that, while it attempted to anticipate her arguments when it made its response, it did not foresee that she would assert the unclean hands argument. South Pointe states that the undersigned considered Vilardi's argument without the benefit of South Pointe's counter argument. South Pointe's position is well-taken. In addition to being heard on the substance of its opposition to Vilardi's unclean hands contention,

3

South Pointe also argues that producing the ordered discovery is unduly prejudicial because the documents contain proprietary and sensitive information.

Finally, South Pointe argues that production of the documents will be unduly burdensome and disproportional to the needs of the case. South Ponte contends that the responsive documents are contained in over 530 banker's boxes and it would take three South Pointe employees a week to review the documents for production. However the undersigned concludes this argument could have been advanced during the initial briefing on the motion to compel, as South Pointe was on notice of the extent of the documentation Vilardi sought and, as such, is not a basis for reconsideration.

The ruling on which which South Pointe seeks reconsideration held:

> As to Vilardi's defense against South Pointe's breach of fiduciary duty claim, she contends that the information is relevant to her defense on the grounds of misrepresentation and unclean hands. "The doctrine of unclean hands is an equitable concept that allows a court to deny injunctive relief or declaratory relief when 'the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue to the detriment of the other party.'" Cyber Solutions Int'l, LLC v. Pro Mktg. Sales, 634 Fed. Appx. 557, 567 (6th Cir. 2016) (*quoting* Performance Unlimited, Inc. v. Questar Publishers, Inc., 52 F.3d 1373, 1383 (6th Cir. 1995)). The doctrine can be asserted both as a defense to a claim for equitable relief and in opposition to an equitable defense. Osborn v. Griffin, No. 2011-89 (WOB-CJS); (2013-32 (WOB-CJS), 2016 U.S. Dist. LEXIS 35991, *94 (E.D. Ky. Mar. 21, 2016). "The doctrine is limited to conduct connected to the subject matter of the litigation." Hurley v. Byassee, No. 5:08-CV-28, 2009 U.S. Dist. LEXIS 105554, *27-28 (W.D. Ky. Nov. 12, 2009). Put another way, "the wrongdoing must have an immediate and necessary relation to the matter being litigated, or must in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication." Javier Steel Corp. v. Central Bridge Co., LLC, 353 S.W.3d 356, 361 (Ky. App. 2011) (*quoting* 27A Am. Jur. 2d *Equity* § 104 (2010)). As the doctrine of unclean hands relates to a defense in equity, discovery can only be relevant if a party seeks equitable relief. South Pointe's complaint seeks legal damages of compensatory and punitive damages, but also seeks disgorgement of profits (DN 1 at p. 12). "An equitable disgorgement award seeks to deprive the wrongdoer of his ill-gotten profits." Osborn v. Griffin, 865 F.3d 417, 452 (6th Cir. 2017). South Pointe also seeks imposition of a constructive trust on all

> misappropriated corporate opportunities and forfeiture of Vilardi's interest in South Pointe, which are equitable remedies. Consequently, the question of whether South Pointe is guilty of unclean hands in regard to business transactions could be relevant to Vilardi' defense against South Pointe's equitable claims.

(DN 67 at p. 8-9).

South Pointe argues that the Court misapplied the unclean hands doctrine because it is only applicable to a party bringing an action. South Pointe is the plaintiff, whereas Vilardi's unclean hands accusations are directed toward Jarrod Shirley, who is not a party to the action. South Pointe asserts that any unclean hands on the part of Shirley resulting from self-dealing cannot be imputed to South Pointe. As a consequence, discovery of South Pointe's business records related to any self-dealing by Shirley is not relevant to Vilardi's defense against South Pointe's claims.

In response, without citation to the record, Vilardi sets forth an extensive recitation of facts. She attributes some of the statements of fact to her claims asserted against Shirley in a derivative action pending in another court. She contends that Shirley, as the majority shareholder of South Pointe, one of two board members and chief executive officer, "is the only person that has the ability to control the actions of the company" (DN 87, p. 3). Citing various state cases on general agency principles, Vilardi argues that South Pointe may have unclean hands when Shirley was acting at least in part to further its business interest, and that the interests of Shirley and South Pointe are commingled.

In replying to Vilardi's argument, South Pointe notes that, with regard to whether "the allegedly tortious actions of South Pointe's majority Shareholder, Jarrod Shirley, can be imputed to the corporation to justify an unclean hands defense" is a mater on which "Kentucky law appears to be silent" (DN 92, p. 2). South Ponte continues by offering decisions from other jurisdictions addressing the legal issue.

What is clear from the parties' pleadings is that resolution of the underlying motion to compel requires a factual finding as to the extent of Jarrod Shirley's control of South Pointe and whether any self-dealing was solely for his own benefit or was as an alter-ego of the corporation. Resolution of the motion also requires a conclusion of law as to whether, under the facts found, that any unclean hands on Shirley's part are imputed to South Pointe so that there could be relevance to the discovery requests. In essence, in seeking reconsideration of the discovery order, South Pointe advocates for summary judgment on Vilardi's unclean hands affirmative defense. This argument exceeds the scope of a motion to compel, which is confined to an evaluation of whether the discovery sought in relevant to a claim or defense asserted in a complaint or answer. "At the motion to compel stage, the Court assesses the relevance of particular documents based upon their relevance to the claims and defenses that are currently part of the action, without deciding the merits of those claims and defenses." 4 MVR, LLC v. Warren W. Hill Constr. Co., No. 12-cv-10674-DJC, 2015 U.S. Dist. LEXIS 83312, at *6 (D. Mass. June 26, 2015). "[A] merits-based assessment is premature because '[a] court does not consider the underlying merits of a [party's] claims in evaluating a motion to compel' and arguments directed to the merits of the plaintiff's claims or the viability of affirmative defenses should be addressed by way of dispositive motion or at trial and not during a discovery dispute." Decker v. Chubb Nat'l Ins. Co., No. 1:15-CV-88, 2015 U.S. Dist. LEXIS 139824, at *9 (S.D. Ohio Oct. 14, 2018) (*quoting* Stafford v. Jewelers Mut. Ins. Co., NO. 3:12-CV-050, 2012 U.S. Dist. LEXIS 178013, at *3 (S.D. Ohio Dec. 17, 2012)). "Generally speaking, the underlying merits of claims and affirmative defenses should not be litigated via a motion to compel." Gratiot Ctr, LLC v. Lexington Ins. Co., No. 16-cv-14144, 2017 U.S. Dist. LEXIS 203033, *5 (E.D. Mich. Dec. 11, 2017).

Here, Vilardi's answer asserts an affirmative defense of unclean hands (DN 10, p. 8). The issue to be resolved in the context of a motion to compel is not whether the affirmative defense is meritorious. The issue to be resolved is whether the discovery sought is relevant to that affirmative defense. In addition to the challenge to the merits of Vilardi's unclean hands defense, South Pointe has argued in general that the information she seeks is unduly prejudicial given the proprietary and confidential nature of the information. Aside from arguing prejudice, however, South Pointe has not demonstrated that the information is not relevant to the unclean hands defense.

## **ORDER**

For this reason, South Pointe's motion for reconsideration is **DENIED**. However, South Pointe's obligation to produce the discovery is **STAYED** for a period of fourteen days from the date of this order. If South Pointe elects to file a dispositive motion on Vilardi's unclean hands defense during that time, the stay will continue until such time as there is a ruling on the dispositive motion. In the event South Pointe prevails on the dispositive motion, then the previous ruling at DN 67 will be rendered moot. If South Pointe does not prevail on the motion, production of the discovery will be due within fourteen days from the date of that ruling.

Copies:    Counsel